Stewart v. Woodward.

---

DAVID STEWART v. J. J. WOODWARD & CO.

No. 289.

1. AGENCY— *Conflicting Evidence—Finding of Jury.* Where the substantial issue in an action for the recovery of a commission for a sale of real estate was as to the existence of an agency to list and place the land with a real-estate broker for sale at a net price to the owner, and where the evidence was conflicting concerning such issue, *held*, that the question was for the jury, and that its general verdict in favor of the party having the affirmative of the issue was a sufficient finding that such agency did in fact exist.

2. ——— *Commission on Sale of Real Estate—Priority of Right.* Where the same land was listed for sale with two real-estate firms, the one which first entered into a written contract for the sale of the property and received part payment of the pur-

chase price from a party financially responsible was entitled to compensation for making such sale, notwithstanding the other firm first procured a conveyance from the owner in compliance with a verbal agreement made by such firm with the grantee in such conveyance.

Error from Reno district court; F. L. MARTIN, judge. Opinion filed May 14, 1898. Affirmed.

*S. W. Leslie*, for plaintiff in error.

*Jas. McKinstry*, and *Z. I. Wise*, for defendants in error.

The opinion of the court was delivered by

MILTON, J. : This action was brought by J. J. Woodward & Co., a copartnership, against David Stewart to recover the sum of $4200 and interest, as commission claimed to be due them for the sale of certain real estate situated in Reno county. The plaintiffs were real-estate brokers at Hutchinson, Kan., and David Stewart, the owner of the land, resided in Philadelphia, Pa. Verdict and judgment in favor of Woodward & Co. in the sum of $506.25. Plaintiff in error seeks to reverse the judgment, numerous errors being alleged.

The evidence on behalf of the plaintiffs below tended to prove substantially the following: That Robert Stewart, who was the brother of David Stewart, resided in Reno county, upon the lands of the latter; that Robert, being authorized in writing so to do, listed with Woodward & Co., for sale, at the net price of $9000, 1760 acres of land, which the latter sold on March 1 to one Latham, of Bloomington, Ill., under a written agreement, Latham making a cash payment of $500, and agreeing to pay the further sum of $12,700 when a deed for the land, executed by David Stewart, should be delivered, together with an

abstract showing clear title ; that Latham was abundantly able to comply with the terms of the contract ; that Woodward & Co. gave him a receipt for the cash payment made, which set forth the terms of the sale and was signed by them as agents for David Stewart ; that on Monday, March 3, Robert Stewart went to the office of Woodward & Co., and, after reading the said sale contract, wrote on the back thereof, '' I hereby ratify and accept the within contract.  Robert Stewart, agent for David Stewart '' ; that David Stewart refused to carry out the contract, and shortly after the date thereof deeded the land to another party, to whom it was sold by Brown & Bigger, who were also real-estate brokers at Hutchinson.

The testimony on behalf of David Stewart showed that he had personally listed the land with Brown & Bigger for sale by them, at a date long prior to that of the listing by Robert Stewart with Woodward & Co. ; that on Februrary 27, 1890, Brown & Bigger found a buyer for the land, but did not enter into any written contract with him or receive any payment from him until after the written agreement had been made with Latham and approved by Robert Stewart ; that on March 4 Robert Stewart telegraphed David, at the request of Brown & Bigger, that the latter had sold the land and advised him to sign the deed which they had already mailed to him.   David Stewart testified that he did not remember writing to Robert to list the land for sale.   It also appears from the record that Robert Stewart wrote a letter on March 3 to David, informing him of the sale by Woodward & Co.

One of the questions presented is whether or not Robert Stewart was the agent of David in the transaction with Woodward & Co.  From the facts we have set forth, it is evident that the jury was warranted in

inferring, as they did infer, the existence of such agency.   The agency being established, it follows that the sale by Woodward & Co. was the first sale of the land, by which David Stewart was bound.  If he was bound by the sale, Woodward & Co. were entitled to their margin of profit in the nature of a commission.

Several of the instructions given by the court are regarded by counsel for plaintiff in error as erroneous. We have examined these carefully, and think that, while subject to criticism in some respects, they nevertheless set forth the law with substantial correctness. The instructions refused, in so far as they were applicable to the facts in issue, were in essence and effect embraced in those given.

Counsel contends that the court erred in one of its instructions in assuming as proven a controverted fact; that is, that David Stewart had written to Robert authorizing him to list these lands for sale. As the testimony of Robert was positive that he had received such a letter, which he afterwards lost, and the testimony of David was that he did not remember whether or not he had written it, we think the contention is not well taken.   Criticism is also made of an instruction wherein the court told the jury that, if they should find for the plaintiffs, it would be their duty to ascertain the amount of compensation to which they were entitled under the evidence at the date of the alleged sale to Latham, and to allow such sum as they found to be due.   Counsel say that if plaintiffs were entitled to any judgment it should have been for $4200, the difference between the list price and the sale price of the land;  and that, since the jury returned a verdict for $506.25, they must have allowed a commission of five per cent. with interest thereon, and that such an allowance was not warranted by the

evidence. We doubt the correctness of the conclusion. The jury might have returned a verdict for $4200 and interest under the evidence and the instructions, but the amount for which they were expected to return a verdict was not specifically named by the court; and it would seem that the jury exercised their discretion, according to some rule satisfactory to themselves and not clearly disclosed by the verdict. The smallness of the verdict does not prove that the jury assumed the existence of a fact not in evidence, nor that they were misled by the instructions. No reversible error appearing in the record, the judgment of the trial court is affirmed.