No. 25,976.

ARTHUR S. TRIMBLE, *Appellee,* v. E. E. DOWELL and FORREST C. ROE, Partners, doing business as DOWELL & ROE (C. O. DIMMOCK, Executor, etc., et al.), *Appellants.* .

SYLLABUS BY THE COURT.

1. BROKERS—*Duplicate Listing by Owner—Liability for Commission.* An owner of real estate may list it for sale with two or more brokers, so long as he does not give any one of them an exclusive agency, and may close a deal with a buyer produced by any one of them, if he acts fairly and in good faith, without being liable to one of the other brokers.

2. SAME—*Duplicate Listing—Procuring Cause of Sale.* When real estate is listed for sale with two brokers, neither of whom has an exclusive agency, the one who is the direct, efficient and procuring cause of the sale is entitled to the commission, although some months previously the other broker had first interested the buyer in the land, but was unable to complete negotiations.

3. SAME—*Compensation—Procuring Cause of Sale.* A farm was listed for sale with two brokers; neither had the exclusive agency. One of them interested S. in the farm, got him to see it and to make an offer on it, but was unable to get the parties together on price, and he did not report the name of his prospective purchaser to the owner. Some months later the other broker, without knowledge that his competitor had interested S. in the farm, got in touch with S. as a prospective buyer, and by additional services and personal obligations succeeded in getting the parties together on price and terms, by which a sale resulted. *Held,* as a matter of law, that the second broker was the direct, efficient and procuring cause of the sale, and entitled to the commission.

Appeal from Brown district court, C. W. RYAN, judge. Opinion filed June 6, 1925. Reversed.

*W. E. Archer,* and *W. F. Means,* both of Hiawatha, for the appellants.

*William I. Stuart,* and *Paul B. Bailey,* both of Hiawatha, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is a controversy between two real estate agents as to which should have the commission for the sale of a farm. The jury made findings of fact and returned a verdict for plaintiff, upon which judgment was rendered, and defendants have appealed.

C. O. Dimmock, of Hiawatha, as executor of an estate, had the selling of a farm, known as the Stickel farm, which he listed at $32,000 with the plaintiff, Arthur S. Trimble, a real estate agent of Sabetha, and with the defendants, Dowell & Roe, real estate agents of Hiawatha, for the purpose of finding a buyer. It was agreed between Dimmock and Trimble at the time of the listing that the commission would be two per cent. The evidence does not disclose that the amount of the commission was mentioned at the time of the listing with Dowell & Roe.

In seeking a buyer, the plaintiff went to the home of Mr. Saylor, an influential, well-to-do farmer in Brown county, introduced himself to Mr. Saylor, told his business and asked if he were in the market to buy land. Mr. Saylor said he would buy something if it were located and priced to suit him. They talked about land in another neighborhood, but plaintiff had no land listed there, but spoke of the Stickel farm, said he had it listed for $32,000, and urged Saylor to go and see it, which he promised to do, and did do a few days later. Plaintiff saw Saylor soon thereafter. Saylor said he had been to see the Stickel farm, liked it very well, that he understood it could be bought for $26,000, and made an offer for it of $25,000 (or $25,-500). Plaintiff said he did not think that sum would buy the place, but that he would submit the bid to Mr. Dimmock, which he did promptly. Mr. Dimmock replied to plaintiff, acknowledging the communication containing the offer, said he had talked with the heirs about it and could not accept it, but said: "I believe the heirs would consider an offer of $30,000 to $32,000. I would suggest that you try to get your bidder to make a better offer." Upon the receipt of this letter plaintiff went to Saylor and urged him to raise his bid. Saylor declined to do this; said it was like an auction; that he would not raise his own bid; that he thought the farm was going to be auctioned off, not by an auctioneer, but by real estate men. He further said he did not want the farm sold out from under him; that he liked the farm and wanted to buy it when the price got right. It does not appear that plaintiff advised Saylor that $30,000 might buy the farm, but the evidence is that he always priced it to Saylor at $32,000. The matters here related took place in December, 1922, and January, 1923. Plaintiff did not go to see Saylor any more (until after the farm was sold) and made no further special effort to try to get the parties together, though he did meet Saylor somewhere in June, and possibly one or two other times earlier in the

year 1923, when they talked about the matter without making further progress. Plaintiff never disclosed to Dimmock the name of his prospective purchaser; neither did he see Dimmock, nor have any communication with him any more that year. On January 2, 1924, Dimmock met plaintiff on the street at Hiawatha and asked plaintiff if he had a buyer for the Stickel farm. Plaintiff replied that he did not have. Dimmock then asked him to get after his buyer, and said he was going to take some off the price; that he was going to sell it for $27,500, and admonished him to "Get busy, because I have another offer."

Sometime in August, 1923, Mr. Saylor went to the office of Dowell & Roe to buy land; he did not know they had the Stickel farm for sale. They talked to him about several farms. He asked if they had the Stickel farm for sale. They told him they did, and priced it to him at $32,000. Either then or at some later conference he told them he would pay $25,000 for it. They communicated this to Mr. Dimmick and told him Saylor had made the offer. Sometime in December, 1923, Dowell talked with Dimmock and learned he would take $28,000. Dowell & Roe then went to see Saylor, at his place, and told him of the new price. Saylor first offered $25,000, then $25,500. He was told an offer of that sum had been refused. He then offered $26,000. Dowell & Roe reported that to Mr. Dimmock, who, after some conference and perhaps the next day, told them he would take $26,000 net, they to have what they could get above that for their commission. They went at once to see Saylor and priced the farm to him at $26,500. Saylor said if he bought the farm he would have to get a real estate loan of $10,000, and that he would not pay any commission on such loan. Dowell arranged, through Dimmock, for Saylor to get such a loan without his paying a commission. Saylor said he wanted to see the farm, and went to see it that day. He made an appointment with Dowell & Roe at their office that evening; they had Mr. Dimmock there. Saylor said he would take the farm at $26,500 if he could get a loan of $10,000 without paying a commission, and if Dowell & Roe would pay the fee of his attorney for examining the title, the fee for recording his mortgage and a certain interest item. In order to make the sale Dowell & Roe agreed to get him the loan without commission, and obligated themselves to pay expense mentioned, aggregating $22.10. This was on January 3, 1924. That evening a contract for the sale of the farm was drawn up and executed, and later carried out.

About January 5, 1925, plaintiff went to see Saylor and learned that he had bought the Stickel farm. He then called on Mr. Dimmock for a commission. Mr. Dimmock said there must be some mistake about that, for Dowell & Roe had made the deal. · Mr. Trimble then brought this suit.

We have spoken of Dowell & Roe as defendants, because the controversy as to who is entitled to the commission is between them and the plaintiff, but that is not quite accurate. Trimble sued Dimmock for $530, being two per cent of $26,500, the price for which the farm was sold, under his listing contract, and alleged in substance that he had fulfilled his contract by finding a buyer for the farm. He made Dowell (later changed to Dowell & Roe) a party defendant, alleging that he claimed some interest in the fund.

Dowell & Roe answered that the farm had been listed with them, that they had found a buyer, and that under their agreement with Dimmock they were entitled to $500, their commission, and asked judgment for that sum against Dimmock. Dimmock answered that he had the farm for sale; that he listed it with both the plaintiff and with Dowell & Roe; that he gave neither of them an exclusive listing; that plaintiff had never advised him who his prospective purchaser was; that the sale had been closed up by Dowell & Roe, and that under the agreement made with them he was to pay a commission of $500, out of which was to be paid certain expense items amounting to $22.10, which he had paid, and that he had on hands $477.90, the balance of the commission. He took a neutral position as to whether the plaintiff or. the defendants, Dowell & Roe, were entitled to the commission, and asked permission to pay that sum into court and be relieved from further liability.

The case proceeded to trial upon whether the plaintiff or the defendants, Dowell & Roe, were entitled to the commission; that is, as to which of them was the procuring cause of the sale. The evidence disclosed substantially the facts as above stated. At the close of the evidence, defendants, Dowell & Roe, asked for a peremptory instruction that the plaintiff could not recover. This was refused, and the case was submitted to the jury. This motion should have been sustained.

The material facts in this case are not controverted. Each of the real estate agents had the farm listed; neither had an exclusive agency. Plaintiff saw Saylor first and interested him in this farm, got him to see it, and had him make an offer on it, which he sub-

Trimble v. Dowell.

mitted to Mr. Dimmock. He tried, without success, to get Saylor to increase his bid. He was unable to get the parties together, there being as much as $5,000 difference between them at the time he last talked to Saylor about it in June, 1923, and he never advised Dimmock who his prospective buyer was. In August Saylor went to Dowell & Roe to buy land. The Stickel land was talked of, but they were then wide apart on the price. Later Dowell & Roe got a new price of $28,000, immediately took it up with Saylor, and continued the negotiations back and forward until the sale was made. In doing so they made a special agreement as to their commission, that it should be what they could get above $26,000; they performed additional services not included in the listing of the farm for sale, by getting Saylor a loan without commission to him, and obligated themselves to pay expense items amounting to $22.10. There is nothing in the evidence to indicate that they were trying to take any advantage of plaintiff or that they even knew he had talked to Saylor about this land. Clearly, it was by the efforts of Dowell & Roe that the difference in price between Saylor and Dimmock was overcome, and it was by their efforts and obligations that the other specific matters in the way of the trade, such as getting the loan for $10,000 without expense to Saylor, and paying the expense items, were ironed out or adjusted so that the sale was made.

An owner of land may place it in the hands of as many brokers as he sees fit, as long as no exclusive agency is given, and where several brokers are employed to effect the same transaction the broker who first produces a purchaser and is the procuring cause of the sale is entitled to the commission, to the exclusion of the other brokers. According to this rule, when a broker employed to sell land procures a person whom he induces to buy, he is entitled to compensation, although another broker first called the purchaser's attention to the property. A broker who is unsuccessful in effecting a transaction in behalf of the principal is not entitled to a commission on the success of another broker. (9 C. J. 616-618.) See, also, *Helling v. Darby,* 71 Kan. 107, 79 Pac. 1073; *Stewart v. Woodward,* 7 Kan. App. 633; *Latshaw v. Moore,* 53 Kan. 234, 241, 36 Pac. 342.

This is not a case where one agent interfered with another who had procured a purchaser and induced him to go to see the land and to purchase, as in *Gregory v. Kennedy,* 82 Kan. 565, 109 Pac. 400. Neither is it a case where the owner of the property knew the name of the first broker's prospective purchaser and that negotiations

47—118 KAN.

were still pending, and with such knowledge closed the deal through a second broker, as in *Beougher v. Clark,* 81 Kan. 250, 106 Pac. 39. In *Crosby v. Bolmar,* 111 Kan. 675, 208 Pac. 633, where there was a controversy as to which of two agents was entitled to a commission, it was held that the one who succeeded in bringing the parties to an agreement as to terms resulting in the sale was, as a matter of law, the proximate, efficient and procuring cause of the sale, and entitled to the commission. See, also, *Anderson v. Hoshaw,* 116 Kan. 92, 225 Pac. 1028.

From the evidence in this case it seems clear that the plaintiff was unable to get the parties together. No sale was accomplished by his effort. The most he did was to initiate the proceedings. Defendants Dowell & Roe, acting independently of the plaintiff, and without knowledge of anything he had done in the matter, by making special agreements and incurring obligations of their own, succeeded in bringing the parties together, and were, as a matter of law, the immediate, efficient, procuring cause of the sale.

The judgment of the court below will be reversed, with instructions to enter judgment against the plaintiff and in favor of Dowell & Roe for $477.90.