No. 26,454.

E. T. Henschel, *Appellant,* v. H. F. Sutton, *Appellee.*

SYLLABUS BY THE COURT.

1. Brokers—*Employment and Authority—Termination of Agency.* When an owner of property lists it with two brokers for no specified time, giving neither an exclusive agency, he is at liberty to terminate the agency of one or both of them at any time before a purchaser is procured who is ready and willing to take the property according to the terms agreed upon.

2. Same—*Termination of Agency—Good Faith.* In such a case the termination of the agency must be done in good faith, and if the agent has actually procured a purchaser on terms acceptable to the owner, and if the owner, knowing the facts and for the purpose of avoiding payment of the agreed commission or in order to favor another broker in the matter of compensation, revokes the agency and sells the property through him, he cannot escape liability to the broker who procured an acceptable offer.

3. Same—*Compensation—Termination of Agency—Good Faith—Instructions.* Where the contention of the broker is that he had earned his commission, and that the owner terminated his agency and took the property out of the market, when a purchaser had been procured, and made the sale of the property through another broker to the prospective purchaser with whom the plaintiff broker had been negotiating, the question of the good faith of the owner was a prominent issue in the case which required full instructions to the jury on the subject.

4. Same—*Compensation—Instructions.* The instructions of the court examined and held to be without material error.

Appeal from Wyandotte district court, division No. 3; William H. Mc-Camish, judge. Opinion filed February 6, 1926. Affirmed.

*O. Q. Claflin, Jr.,* and *Harriet Parks Kirby,* both of Kansas City, for the appellant.

Appeal and Error, 4 C. J. pp. 843 n. 65, 1039 n. 10. Brokers, 9 C. J. pp. 520 n. 10, 616 n. 28, 660 n. 67; 49 L. R. A. n. s. 985; 24 A. L. R. 1537; 4 R. C. L. 254.

Henschel v. Sutton.

*Robert Garvin, Evart Garvin,* both of St. John, *E. S. McAnany, M. L. Alden* and *T. M. Van Cleave,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Plaintiff sued to recover a commission for a sale of defendant's property, with the result that a verdict and judgment went for defendant. Plaintiff appeals.

H. F. Sutton, who resided in St. John, Kan., was the owner of real property in Kansas City, and had listed the same for sale with plaintiff, E. T. Henschel, and also with U. S. Sartin, but had given neither of the brokers an exclusive agency. The property was listed with plaintiff in May, 1923, but had been placed in the hands of Sartin for sale about seven years before that time, and Sartin had also acted for Sutton during this period in looking after the property in the matter of collecting rents, paying taxes and the like. On the written application of plaintiff for the agency, defendant answered that he might find a purchaser at the price of $300 a front foot, amounting to $33,750, naming the cash payment required and stipulating that the balance should be paid in installments running for a period of five years, the deferred payments to bear interest at the rate of six per cent and to be secured by a mortgage on the property. On June 23 plaintiff replied that purchasers deemed the price to be too high, and that if a reduction was made by defendant, he thought the property could be sold. On November 30, 1923, plaintiff wrote that he could sell the property for $25,000, but defendant refused to accept the offer. On December 3, 1923, plaintiff advised defendant that the offer was very close to a peak price, and urged that it was a golden opportunity which defendant should embrace, and then asked what was the least price for which a sale would be made. In response defendant wrote that he would make a price of $32,000 cash, but that this proposal was only for immediate consideration. Plaintiff replied that the proposed purchaser would not raise the offer, and that his offer would only stand until December 15. On December 8, 1923, defendant wrote that if plaintiff's customer would pay $30,000 for the property and make a cash deposit of $5,000 when the contract of sale was made, and close the deal in thirty days, a sale would be made. Plaintiff replied on December 12, 1923, stating that he had induced the customer to make an offer of $27,000, and advised de-

fendant to accept it. Defendant replied, adhering to the price fixed, saying he would hold the offer open which he had made until December 15. On December 22, plaintiff wrote to Sutton, expressing the opinion that he could dispose of the property if he were given about thirty days' time in which to interest prospective purchasers, and would devote his entire energy to doing it if an inclosed agreement giving him the exclusive agency to sell was executed; but the exclusive agency was not given. On December 24, the defendant wrote that he would meet the proposed customer half way, and would let him have the property for $28,500 in cash, plaintiff's commission to be $500. Three days later, and on December 27, defendant sent a telegram to plaintiff stating that he had withdrawn the property from the market. The telegram was confirmed by a letter of the same date, and stated that if he should again place the property on the market he would take the matter up with plaintiff. The proposed purchaser was Ben Gorman, who testified that he had had negotiations with a Mr. Holmes, who was working from Sartin's office in July or August of 1923. At first Gorman made an offer of $250 a front foot for a portion of the property, but this was not accepted, and later he made an offer to Holmes of $300 a foot for the east fifty feet of the property. This offer was likewise refused by the defendant. Sartin, who was trying to sell the property, proposed that if they could get Gorman to make an offer on the basis of payment in cash with a good faith payment of $1,000 when a contract of sale was made, that he might be able to induce the defendant to accept it, and thereupon negotiations were continued with Gorman until about the holidays. Gorman then proposed that he would give $27,000 and put up $1,000 as a forfeit. Sartin then communicated this offer to defendant, which was first rejected, and after considerable discussion over the long-distance telephone, in which Sartin had told the defendant that there was $730 of taxes against the property, and that the interest on $27,000 at seven per cent would yield him $7 every day, with the result that on January 4, 1924, defendant agreed with Sartin that the property might be sold to Gorman on the terms stated. Holmes testified that he had no knowledge that another agent had the property for sale and did not have any acquaintance with the plaintiff. Defendant states that when he closed the negotiations with Sartin he didn't know who the prospective purchaser was.

Plaintiff testified that until the time he heard that Gorman had bought the property through the agency of Sartin he had never told Suton that Gorman was the prospective purchaser. Defendant closed the matter up about January 28, 1924, and at that time learned that Sartin was representing Mr. Gorman in the negotiations. The plaintiff in the meantime had written defendant that he claimed Gorman was his customer. The jury in answer to special questions found that the plaintiff did not have an exclusive agency for the sale of the property, that the property was taken out of plaintiff's hands on December 27, 1923, and was not again listed with him. That Sutton did not know the name of the prospective purchaser, Gorman, at the time he withdrew the property from plaintiff's hands for sale, and neither did he know at the time he withdrew the property that Sartin, his other agent, had a prospective purchaser for the real estate, and to the specific question: "Was defendant acting in good faith in notifying plaintiff that the property was withdrawn from the market?" The jury answered, "Yes."

On this appeal complaint is made that there was error in the instructions given, and the objection is based mainly on the claim that the court gave too much prominence to the good or bad faith of defendant in the instructions. It is conceded that there was no exclusive agency, and that the defendant had the right to list the property with as many brokers as he saw fit, and further that the one who first produces a purchaser and is the procuring cause of a sale is entitled to a commission to the exclusion of the others. Here both brokers happened to be dealing with the same person as a prospective purchaser, a fact that was not brought to the attention of the defendant. Several offers were made through both parties which were not accepted by defendant. Near the end of the negotiations plaintiff made an offer of $27,000, which the defendant declined to accept and countered with a proposal to take $28,500. Shortly afterwards the defendant took the property off the market and out of plaintiff's hands, but very soon afterwards was induced by the other broker to accept an offer of $27,000; but it may be said that it was accompanied with a good faith pledge of a cash payment of $1,000. In view of the closeness of the time the offer was made and of the withdrawal of the property from sale by plaintiff, and the time when the sale was effected by the other broker, for

the price named by plaintiff, the matter of good faith was a most important, if not the controlling question in the case. If plaintiff was the moving and procuring cause of the sale to Gorman, as he contends, and if defendant in order to favor the other broker or to avoid payment of commission to plaintiff, or even to lessen the amount of commission to be paid, took the property out of plaintiff's hands and made the sale through the other broker to the prospective purchaser, it would have been an act of bad faith and he could not thereby escape liability to the plaintiff. Since defendant had the right to list the property with several brokers, terminate plaintiff's agency when he chose, and to close a sale with the broker who continued negotiations and first induced a buyer to purchase the property on terms acceptable to defendant, an instruction requiring good faith on the part of the defendant was really favorable to the plaintiff. As between the brokers it was defendant's duty to remain neutral, not to favor or interfere with either in his efforts to procure a purchaser, and good faith required that he close the transaction with the one who first induced a buyer to enter into a contract of purchase. For the protection of plaintiff's interest therefore, the matter of good faith was highly important, as he was contending that there was bad faith in the withdrawal of the property and in closing a contract with a customer which he had previously procured, and therefore, as the issues were presented, it was the duty of the court to clearly bring that feature of the case to the attention of the jury. In the second instruction, the court told the jury that:

"2. The agreement under which the defendant listed his property with plaintiff for sale is contained in the correspondence between the parties, which has been introduced in evidence. Under this agreement, the plaintiff Henschel did not have the exclusive right to sell the property, nor did he have an agency for any specified time. Under the agreement, the defendant Sutton had the right (so long as he acted in good faith, and did not attempt to cheat plaintiff) to sell the property himself, or to let any other agent sell it, or to withdraw it from the market, at any time, without becoming liable or indebted to plaintiff for a commission."

Following this instruction a correct definition of bad faith was given to the jury. In the following instructions, in which the court set forth the claims of the parties and what was essential to a recovery by each, good faith on the part of the defendant was declared to be required. For instance the court gave the following instructions:

Henschel v. Sutton.

"6. But where an agent shows property and induces the prospective purchaser to be and become ready, willing and able to purchase the property at a price and on terms which the owner is willing to accept, the owner cannot avoid liability for a commission which might otherwise accrue, by temporarily taking the property off the market, and then entering into negotiations with the proposed purchaser through another agent, for the purpose and with the object in view of defeating the first agent out of his commission.

"7. In order for a real estate broker to be entitled to a commission in any case, he must prove by a preponderance of the evidence that his efforts to sell the land was the primary, proximate and procuring cause of the sale. So, in this case, if the efforts of the plaintiff were the primary, proximate and procuring cause of the sale to Ben Gorman, and the defendant Sutton, in bad faith and for the purpose of defeating the payment of commission to Henschel, only pretended to withdraw the property from the market, you should find for the plaintiff.

"8. If the sale was made through Mr. Sartin and Mr. Holmes in good faith as a result of a new and independent cause, not connected in any way with anything Henschel had done, the defendant did not become liable to pay a commission to the plaintiff, and if you find that the sale was made through the efforts of Mr. U. S. Sartin independently of any efforts of plaintiff, Henschel, you should find for defendant in this action."

In the recent case of *Trimble v. Dowell*, 118 Kan. 733, 236 Pac. 644, where property had been listed with two brokers, each of whom had carried on negotiations with the same prospective purchaser, and a question had arisen as to who was the procuring cause of the sale, it was held that fairness and good faith on the part of the owner in closing the sale with one of them was essential. It was decided that—

"An owner of real estate may list it for sale with two or more brokers, so long as he does not give any one of them an exclusive agency, and may close a deal with a buyer produced by any one of them, if he acts fairly and in good faith, without being liable to one of the other brokers.

"When real estate is listed for sale with two brokers, neither of whom has an exclusive agency, the one who is the direct, efficient and procuring cause of the sale is entitled to the commission, although some months previously the other broker had first interested the buyer in the land, but was unable to complete negotiations." (Syl. ¶¶ 1, 2; See also, 9 C. J. 616.)

As will be seen the court in its instructions made it clear that if plaintiff was the procuring cause of the sale on terms which defendant was willing to accept he could not be defeated by any machinations of the owner. The jury was also advised that it was not necessary that the claimed bad faith of defendant should be shown by direct and positive evidence, but that they had the right to consider all the evidence in the light of all the circumstances

together .with all reasonable inferences to be drawn therefrom as to the existence of bad faith. Some of the circumstances tended to sustain the plaintiff's theory of the case, but the jury has settled the facts in dispute and its findings are binding here. While the court strongly stressed the element of good faith in the charge, we cannot say that this feature of the instructions constitutes a good ground of reversal.

No other material question is raised by plaintiff, and finding no substantial error in the record, the judgment is affirmed.