No. 30,010.

Guy S. Speakman, *Appellant*, v. W. W. Wells and F. L. Roberts, *Defendants;* Charles E. Dye, Intervener, *Appellee.*

(2 P. [2d] 86.)

Opinion filed July 3, 1931.

*G. W. Sawyer,* of Liberal, for the appellant.

*Carl Van Riper, Albert Watkins* and *Arthur C. Scates,* all of Dodge City, for the appellees.

The opinion of the court was delivered by

Harvey, J.: This is an action by a real-estate broker for a commission. Another real-estate broker intervened and claimed the commission. The owners of the property sold conceded they were liable to a commission, paid the money into court, and asked to be relieved from further liability. Their concern here is that they not be required to pay two commissions. The principal contest is between the plaintiff and the intervener. The action was tried to the court, and judgment was for the intervener. The plaintiff has appealed.

The findings made by the trial court are as follows:

"Findings of Fact.

"1. The court finds that the plaintiff was a real-estate broker living at Tyrone, Okla., and that through correspondence the defendants Wells and Roberts listed with him for sale the property known as the Dodge ranch in Colorado, their first listing with the plaintiff being a net-price proposition. At some subsequent time the plaintiff and one of the defendants agreed to price the land higher and allow plaintiff $1 per acre if he sold the land.

"2. The court finds that the interpleader, Chas. E. Dye, is a real-estate broker at Satanta, Kan., and that the defendants, Wells & Roberts, listed the Dodge ranch with him for sale and agreed to pay $1 per acre commission to the agent closing the sale.

"3. The court finds that Pierce and May were agents for the plaintiff Speakman; that Speakman and his agents first talked to Dunham about the Dodge ranch on a trip to Colorado made for the purpose of showing other land belonging to Speakman; that Speakman showed the ranch or a part of it that day and Dunham told him he would come back the following Sunday; that Dunham did not return the following Sunday; that Speakman waited at the ranch for him on Sunday, but Dunham did not meet him there; that Speakman saw him later in the day at Two Buttes and Dunham told him to ascertain the exact acreage (which Speakman did not then know) and ascertain the amount of a loan which could be obtained on the ranch; that Dunham would not become a purchaser of the ranch unless he could get a loan of a considerable amount thereon; that Speakman and his agents Pierce and May did not communicate to Dunham the amount of a loan that could be obtained on the ranch or the acreage it contained; that Speakman abandoned Dunham as a purchaser of the Dodge ranch.

"4. The court finds that after Speakman had abandoned his efforts to sell the ranch to Dunham, that Chas. E. Dye, working independently of Speakman, and without knowledge of Speakman's prior effort to sell the ranch to Dunham, until the signed contract was presented to Wells, interested Dunham in the purchase of the ranch and induced Dunham to enter into a contract purchasing the ranch, and assisted in the procuring of the loan, securing of the abstracts and the final closing of the sale.

"5. The court finds that Dunham was not a purchaser who was ready, able and willing to purchase the Dodge ranch at any time that Speakman was endeavoring to sell the ranch to him, and would never have been a purchaser of the ranch had not Dye procured a loan of $15,000 for him to enable him to pay the same.

"CONCLUSIONS OF LAW.

"1. The court finds that Chas. E. Dye was the procuring cause of the sale of the real estate involved in this action, and is entitled to the payment of the commission of $1 per acre.

"2. The court finds that the plaintiff, Guy S. Speakman, abandoned the sale of the land to the purchaser and was not the procuring cause of the sale, and is therefore not entitled to any commission."

Appellant complains of the findings of fact made by the trial court and argues the evidence at length. It would serve no useful purpose to discuss the evidence in detail. On some points the evidence was conflicting, and as to those the findings of the trial court are binding upon this court. There is an abundance of substantial evidence to support all of the court's findings.

Appellant argues that he is entitled to a commission even though

the owners owed a commission to the intervener because of differences in the listing contracts. The listing contract with appellant was to find a buyer, while the contract with the intervener was that he should close a deal. The intervener did close the deal, but appellant contends that he found the buyer who did eventually purchase the property. It is true appellant first showed the land, or a part of it, to Dunham, the purchaser, priced it to him, and introduced him to one of the owners. But Dunham at that time was not ready to buy the property, nor was he able to do so unless he got a substantial loan on it. In appellant's last conference with him appellant was to ascertain the acreage of the ranch property, which he did not then know, and a part of which had been shown to Dunham, and also was to ascertain and advise Dunham how much of a loan he could get on the land. He did neither of those things, nor did he later communicate with Dunham. The court was justified, under the evidence, in finding that Dunham was not then ready, able and willing to buy, and that appellant, on learning that Dunham had to have a substantial loan on the property, which he was to get in order that payment could be made in cash, abandoned his efforts to sell the property. He did not find a purchaser who was ready, able and willing to buy. Appellant did not have an exclusive listing of the property. His request for that had been denied. He knew it was listed with other brokers. Later the intervener, who knew Dunham, but knew nothing of appellant's previous efforts to sell the property to him, opened negotiations with Dunham to sell the property to him. His listing contract required him to close a deal before he was entitled to a commission. He got Dunham to see the property more completely, and got him to execute a contract for the purchase of it and make a $5,000 payment, took the contract to the owners and had it executed by them, and at considerable trouble and expense negotiated a loan of $15,000 on the property for the purchaser in order that he might complete the purchase, and thereby earned his commission under his listing contract.

Appellant cites a number of authorities on the point that when a broker is employed to find a purchaser his authority is limited merely to that of procuring a purchaser to take the property at a price and on terms agreeable to the owner, and that if he interests a prospective purchaser in the property, who eventually does close a deal with the owner, the agent is entitled to the commission. That rule has been frequently applied, but in all those cases the facts

were such that it could be fairly found that the broker was the procuring cause of the sale which was made. In most of those cases no other broker had anything to do with the transaction. These authorities are not applicable to a situation in which the property was listed with two or more brokers, and the question is, which of them was the procuring cause of the sale, and especially where it is found, on competent evidence, that the broker claiming a commission had abandoned his efforts to sell the property, and the sale which was eventually made was not because of his efforts but because of the efforts of another.

To entitle plaintiff to a commission it is essential that his efforts were the procuring cause of the sale. (*Votaw v. McKeever,* 76 Kan. 870, 92 Pac. 1120; *Crosby v. Bolmar,* 111 Kan. 675, 208 Pac. 633; *Trimble v. Dowell,* 118 Kan. 733, 236 Pac. 644; 9 C. J. 611, and the many cases collected in the annotations; 23 L. R. A., n. s., 164; 9 A. L. R. 1194.)

We find no error in the record, and the judgment of the court below is affirmed.