No. 32,333

BEN GURLEY, *Appellee*, v. PHOENIX JOINT STOCK LAND BANK OF KANSAS CITY, *Appellant*.

(45 P. 2d 576)

Opinion filed June 8, 1935.

*Richard E. Bird, Richard E. Bird, Jr.,* both of Wichita, and *John F. Reinhardt,* of Kansas City, Mo., for the appellant.

*C. L. Kagey, Hal M. Black* and *L. M. Kagey,* all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for a real-estate dealer's commission. Plaintiff prevailed, and defendant appeals.

It appears that in August, 1933, the defendant had acquired, through foreclosure, a ranch of 16,680 acres in Comanche county. Through one F. G. Holmes, managing officer of its real-estate department, it made an agreement with the plaintiff, a Salina real-estate dealer, to pay him a specified commission to procure a buyer for the ranch at a price of $5 per acre. Plaintiff called upon one George C. Davis, who seems to have been a man of large means,

and endeavored to interest him in the ranch. About the same time plaintiff notified defendant that he had made contact with Davis as a prospective purchaser. Plaintiff submitted to Davis two plats, one of the ranch and another showing its relation to neighboring ranches, and gave Davis other information about it. When first approached on this subject by plaintiff, Davis was about to purchase a large ranch near Manhattan, through the agency of another real-estate dealer, R. D. Jones. Davis told plaintiff that he was contemplating the purchase of several ranches, as he feared the country was about to embark in financial inflation.

After several personal and telephone conversations and correspondence between Davis and plaintiff, Davis promised that he would go and look at the ranch as soon as he could conveniently do so. Plaintiff made arrangements for transportation to take Davis to see it. Pending these negotiations and arrangements, defendant wrote to plaintiff as follows:

"October 6, 1933.

. . . . . . . . . . . . . . . .

"We have had some correspondence with you relative to the Arrington ranch in Comanche county of 16,680 acres. . . .

"This is to advise you that we have decided to withdraw this ranch from the market until December 6, 1933. I am giving you this information so that you will not make any attempt to sell the same, as we would not care to consider any deals on this ranch until after December 6, 1933."

Following receipt of this communication plaintiff told Davis "we couldn't deal on the ranch until after December 26, 1933." Responding thereto Davis said "after that time we would talk again."

Sometime after the expiration of the period during which plaintiff had been directed by defendant to suspend his efforts to sell the ranch, plaintiff called at Davis' office in Kansas City in the further pursuit of his endeavors to sell it to Davis. He was told that Davis had gone to Florida and would return the latter part of February, 1934. While in Florida Davis' fears about inflation recurred, and by long-distance telephone he instructed one of his partners, Merrill, in Kansas City, to get in touch with one Jones, the real-estate dealer through whose agency Davis had bought the Manhattan ranch during the preceding autumn, and to go with Jones to look at certain ranches in western Kansas and Texas, but did not give Merrill any instructions to inspect the Comanche county ranch which plaintiff for some months had been trying to sell to him.

Davis returned from Florida on February 16, and according to

his testimony Jones at once commenced to urge him to buy the Comanche county ranch. Davis testified:

"I returned from Florida about February 16. On my return Jones came in to see me and brought up the question of the Arrington [Comanche county] ranch. I put him off from day to day and then offered a bid of $85,000 if he would bring a signed contract within an hour. That was February 23. He came back with Mr. Holmes and I signed the contract and gave them a check for $10,000 on account."

Following this purchase of the ranch by Davis, plaintiff demanded his commission. That being refused led to this lawsuit, in which plaintiff prevailed. In addition to the verdict in his behalf the jury answered special questions thus:

"1. Was the plaintiff in this case an agent for the defendant in the sale of the ranch in question? A. Yes.

. . . . . . . . . . . . .

"4. If you answer question number 1 'yes,' did plaintiff Gurley make any effort to sell the ranch to George H. Davis after December 6, 1933? A. Yes.

"5. If you answer question number 4 'yes,' of what did that effort consist? A. A trip to Kansas City to contact George H. Davis. Upon finding that George H. Davis had gone to Florida, Mr. Gurley left word to be notified upon Mr. Davis' return from Florida.

"6. What agent of the defendant first brought the ranch in question to the attention of the purchaser, George H. Davis? A. Mr. Ben Gurley—in a direct way.

"7. What agent of the defendant was the proximate, predominating and procuring cause of the sale of the ranch in question to George H. Davis? A. Mr. Ben Gurley."

Judgment was entered for plaintiff, and defendant assigns various errors, the first of which pertains to the overruling of the demurrer to plaintiff's evidence. Our summary of the facts gleaned from the record as above makes it rather obvious that under the liberal rules of law to which this court has always adhered in dealing with real-estate dealers' commission cases, the overruling of defendant's demurrer to the evidence was quite proper. (*Grimes v. Emery,* 94 Kan. 701, 146 Pac. 1135 and citations; *Osburn v. Moore,* 108 Kan. 90, 193 Pac. 892; *Brotton v. Dawson,* 137 Kan. 44, 19 P. 2d 467.)

Appellant, however, stresses the literal language of plaintiff's witness, who testified that under his employment by Holmes, managing officer of the defendant bank, plaintiff was only to be paid a commission "if he could *consummate* a deal which would be satisfactory to them." It is argued that to "consummate" means to bring to completion, to finish, to achieve; and Webster is given as au-

thority. But a fair reading of the testimony makes it clear, we think, that the word "consummate" was merely the choice of words of the witness. He did not intend to convey the idea that all the details of a sale of real estate, such as securing the signature of a buyer to a written contract of purchase and sale, and a deed of conveyance duly signed, sealed and delivered, had to be consummated, completed, finished or achieved by plaintiff before he would be entitled to his commission. (*Brown v. Gilpin*, 75 Kan. 773, 90 Pac. 267; *Orr v. Rieger*, 133 Kan. 558, 300 Pac. 1074.)

It is next contended that defendant was entitled to an instructed verdict. This argument is apparently based on certain evidence that the sale of the ranch was brought about by Jones, and not by plaintiff. It is doubtful if there was even a plausible talking point before the jury to that effect; certainly it was no more than that; and an instructed verdict would have been highly improper in view of the ample evidence adduced to establish plaintiff's cause of action.

Error is next urged on the instructions given and refused. This is predicated, in part, upon the testimony discussed above—that plaintiff's contract of agency was to "consummate" a sale, not merely to find a buyer. We have already held the testimony should not be given such a strictly technical meaning. In this connection defendant also contends that plaintiff abandoned his efforts to sell the ranch to Davis on October 6, 1933, and thereafter he was not a contributing factor in the sale of the ranch. We think not. In obedience to defendant's order, plaintiff suspended but did not abandon his efforts to procure Davis as a buyer. Moreover, we think the record makes it clear that plaintiff's work was so far accomplished before defendant directed him to halt his efforts for sixty days that little remained to be done after December 6. He had already apprised Davis of the merits of the ranch; Davis and plaintiff had agreed to talk it over after the sixty days had expired; but instead of doing so his fears of inflation so obsessed him that he decided "on an hour's time" to buy the ranch. Davis' course would justify an inference by the jury that he was merely collaborating with defendant to beat the plaintiff out of his commission. Defendant cites cases like *Trimble v. Dowell*, 118 Kan. 733, 236 Pac. 644, which in our opinion has little resemblance to the case at bar other than that two real-estate agents were trying to sell the land. In that case the controlling facts were so clear and uncontroverted that the court quite properly decided which of the agents had been

the procuring cause of the sale. Here, as we have already said, it was a jury question; and indeed not a difficult one when, in addition to the other evidence, this testimony of Davis was weighed in the jury's scales of credence:

"I returned from Florida about February 16. On my return Jones came in to see me and brought up the question of the Arrington ranch. I put him off from day to day and then offered a bid of $85,000 if he would bring a signed contract within an hour. That was February 23. He came back with Mr. Holmes and I signed the contract and gave them a check for $10,000 on account."

It is finally argued that the trial court erred in refusing to set aside the answers to the special questions, and particularly the second sentence of the answer to special question number 5. Counsel for plaintiff concede that the literal fact stated in that sentence was not established by express testimony; that it was only an inference of fact justified by the circumstance that when plaintiff went to Kansas City about the Christmas holidays to continue his negotiations with Davis according to their prearrangement he was informed that Davis had gone to Florida. Be that as it may, this finding is not vital to plaintiff's action. If the trial court had struck it out it would not warrant a change in the result, nor defeat plaintiff's right of recovery. It did not detract from the controlling potency of the jury's special findings 1, 6 and 7. Plaintiff's work as the procuring cause of the sale of the ranch was largely done before December 6. In view of the circumstances after that date it mattered little that Davis closed the deal without further conversation with plaintiff.

No material error inheres in the judgment and it is therefore affirmed.